# IN THE COURT OF APPEALS OF IOWA

_____

No. 25-0202
Filed June 10, 2026

_____

**State of Iowa,**
Plaintiff–Appellee,

v.

**Isaac Alexander Bachman,**
Defendant–Appellant.

_____

Appeal from the Iowa District Court for Webster County,
The Honorable Christopher C. Polking, Judge.

_____

**AFFIRMED**

_____

Colin Murphy of Gourley Rehkemper Lindholm, P.L.C., West Des Moines,
attorney for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney
General, attorneys for appellee.

_____

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Greer, P.J.

1

**GREER, Presiding Judge.**

Jury instructions direct a jury in their duty to apply the law to the facts, but Isaac Bachman contends that the jury that convicted him could only fail in that effort given the instructions provided. After a jury convicted him of murder in the first degree, a class "A" felony, Bachman requests we grant him a new trial. His issues center on the jury instructions given—that jury instruction number 19 did not include the State's burden to prove that Bachman acted without justification and that jury instruction number 21 permitted the jury to infer malice, premeditation, and specific intent to commit a murder from Bachman's deliberate use of a firearm, which goes against his right to bear arms. Bachman asserts the cumulative effect of these two instructions is that the jury could infer Bachman was guilty of murder in the first degree before it considered the defense of justification. Bachman also urges that his case presents substantial issues of first impression.

Arguing we need only apply established legal principles, the State takes the position that the instructions did not misstate the law and the jury was properly instructed on the issues presented. Likewise, it contends that any error was harmless because the video footage showed Bachman shooting the victim four times without any evidence of justification.

We find no error in the jury instructions submitted to the jury, rejecting Bachman's constitutional arguments as well. We affirm Bachman's conviction.

## I. Background Facts and Proceedings.

Over several hours starting the evening of June 16, 2024, Bachman and a minor were arguing on a messaging application, which included name-calling and threats to fight. Bachman dared the minor to come to his house.

After one heated exchange, Bachman got up, got a rifle, and went out to the backyard, rifle in hand.  Although it is disputed who did what, the video footage from a neighbor's security camera shows the minor running alongside Bachman's fenceline.  When the minor reached the gate to the backyard, it appears Bachman threw it open, but then the minor shoved it back, hitting Bachman.  Bachman again opened the gate, and as the minor came into view, Bachman shot him multiple times in the neck and torso.  The minor died; the autopsy showed four bullets entered the minor's left side, specifically in his neck, chest, and abdomen.

Bachman called 911.  When law enforcement arrived, Bachman told them that he had shot the minor in self-defense because the minor "was trying to break into his house and slammed a gate in his face, and so he shot him."  The witnesses who were at Bachman's house that day supported this story until Bachman's trial.  The two witnesses in Bachman's backyard, Destiny Holloway and Elijah Hunt, both testified that Bachman told them, "Let's say that it was self-defense."  At trial those witnesses testified that they felt pressured to report Bachman's version.  Hunt also heard Bachman after the shooting tell his girlfriend, "I will kill anyone for you."  Part of the ongoing fight in the messages between the minor and Bachman involved the girlfriend.  Video footage of the incident was played to the jury.

Bachman offered various versions of the events leading up to the shooting to law enforcement, including that he opened the gate with the intent to have a fist fight with the minor.  He also described how the bolt-action rifle he used required that he manually pull the bolt to cycle a new round into the chamber before each of the four shots that he fired.  But his descriptions of how he held and used his gun before and during the shooting did not match what could be seen on the video footage.  Likewise, Bachman

downplayed the aggressive messages he sent the minor. Yet, even as Bachman sat in jail after he was charged with first-degree murder, he sent text messages to people that suggested he was the aggressor and was bragging and laughing about the murder.

After a trial, the jury convicted Bachman of first-degree murder and he was sentenced to life in prison without parole. In Bachman's motion for new trial, he asserted that he

> [sought] a new trial pursuant to Rule 2.24(2)(b)(5), when . . . the jury was improperly instructed in a material matter, including but not limited to, issuing instruction to the Jury that [Bachman] would be guilty if the elements of alleged crimes are met, without requiring additional element regarding justification, as well as instructing the jury that premeditation and malice and specific intent to kill could be inferred from use of a dangerous weapon. Said improper instructions resulted in confusing instructions and instructions that violate [Bachman's] rights, including his right to bear arms under both the U.S. and Iowa Constitutions, and his right to a fair trial under the same.

The district court denied the motion and Bachman appeals.

## II. Standards of Review.

Review of a ruling on the failure to give or not give certain jury instructions is for correction of errors at law. *See State v. Kraai*, 969 N.W.2d 487, 490 (Iowa 2022). Errors related to jury instructions are presumed prejudicial unless the record shows no prejudice existed. *State v. Murray*, 796 N.W.2d 907, 908 (Iowa 2011).

"[W]hen a jury instruction implicates a constitutional right, our review is de novo." *State v. Green*, 896 N.W.2d 770, 775 (Iowa 2017). Bachman raises both federal and Iowa constitutional challenges.

4

## III. Analysis.

Bachman contends the trial court erred in overruling his objection to (1) the marshaling instructions that did not include lack of justification as an element of each offense and (2) a jury instruction on the permissive inference of malice or intent from a person's use of a dangerous weapon to cause death after an opportunity to deliberate, which violated his constitutional right to bear arms under article I, section 1A of the Iowa Constitution. Further he asserts that the cumulative effect of these errors was prejudicial to him in his quest for a fair trial. We start with the justification instruction.

**A. Marshaling Instruction 19 and the Justification Defense.** Bachman filed a notice of justification and proposed jury instructions that set out the justification defense and the applicable burden of proof. "The justification defense is built on the notion that one is justified, and thus shouldn't be held criminally liable for, using reasonable force to protect against an imminent threat or harm." *State v. Johnson*, 7 N.W.3d 504, 508 (Iowa 2024). Bachman proposed the following marshaling instruction explaining murder in the first degree:

> The State must prove *all of the following elements* of Murder in the First Degree:
>
> 1. On or about June 17, 2023 Isaac Bachman shot [the minor].
>
> 2. [The minor] died as a result of being shot.
>
> 3. [Bachman] acted with malice aforethought.
>
> 4. [Bachman] acted willfully, deliberately, premeditatedly and with a specific intent to kill [the minor].
>
> 5. [*Bachman*] *acted without justification.*
>
> If the State proved all of the elements listed above, [Bachman] is guilty of Murder in the First Degree. If the State has failed to prove any

one of the elements, [Bachman] is not guilty of Murder in the First Degree, you will then consider the charge of Murder in the Second Degree in Instruction No. _____.

(Emphasis added).  Instead, the district court instructed that:

As to Count I of the Trial Information, *the State must prove all of the following elements* of Murder in the First Degree:

1. On or about June 17, 2023, [Bachman] shot [the minor].

2. [The minor] died as a result of those gunshot wounds.

3. [Bachman] acted with malice aforethought.

4. [Bachman] acted willfully, deliberately, premeditatedly and with a specific intent to kill [the minor].

If the State has proven all of the elements, [Bachman] is guilty of Murder in the First Degree, *unless you find the acts justified as set forth later in these instructions*.  If the State has failed to prove any one of the elements, [Bachman] is not guilty of Murder in the First Degree, and you will then consider the charge of Murder in the Second Degree explained in Instruction No. 23.

(Emphasis added).

Directing us to these jury instructions, Bachman asserts the trial court shifted the burden of proof related to the justification defense to him. "Improper allocation of the burden of proof constitutes reversible error." *State v. Lawler*, 571 N.W.2d 486, 491 (Iowa 1997).  As it should work, once Bachman produced sufficient evidence to support the justification instruction, the burden shifted to the State to prove lack of justification beyond a reasonable doubt.  *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020).

When Bachman raised his issue in the motion for new trial, the trial court found no error and stated that "[t]he clause in each marshaling instruction made clear that even if all the elements of the crime were met,

6

the defendant was not guilty if the acts were justified as set forth in later instructions."  To that point, the State agreed with the court and maintained that lack of justification is not an element of first-degree murder and need not be treated as one.  *See* Iowa Code §§ 707.1–.2 (2024).

From his perspective, Bachman asserts that the jury was never instructed "to consider the defense of justification whatsoever."  And he claims the instructions were silent on the State's burden to prove beyond a reasonable doubt that Bachman acted without justification:

> Nor is the jury told to find Bachman not guilty if the State fails in its proof. From the plain language of the instruction, the jury would logically believe that justification was an affirmative defense, which impermissibly shifts the burden of proof to Bachman only after the jury found him guilty of murder.

But as the State asserts "justification *is* an affirmative defense rather than an element."  *See State v. Delay*, 320 N.W.2d 831, 833 (Iowa 1982) (emphasis added); *see also White v. Harkrider*, 990 N.W.2d 647, 656 (Iowa 2023) (listing cases describing justification as an affirmative defense). Reading the first degree murder marshaling instruction provided to this jury, the court listed the elements of the charge as set out in the statute, but then clarified: "If the State has proven all of the elements, [Bachman] is guilty of Murder in the First Degree, *unless you find the acts justified as set forth later in these instructions*." (emphasis added).  And instruction 45 provided a detailed definition of justification confirming that "[t]he State must prove beyond a reasonable doubt that [Bachman]'s use of force was not justified."  "Jury instructions are not considered separately; they should be considered as a whole."  *State v. Fintel*, 689 N.W.2d 95, 104 (Iowa 2004).

*Kuhse* discussed the lack of any reference to an element as a defense or to a "cross-reference" to a defense the State is required to prove.  937 N.W.2d at 630–31 (finding the jury properly considered the justification defense after

reviewing the instructions as a whole, further supported by the closing arguments explaining the application of the defense). Returning to the instructions given here, there was a cross-reference in the marshaling instruction that specifically told the jury that proof of justification could mean that Bachman was not guilty of the charge. Even more, like *Kuhse*, in this case there was an instruction defining justification and the burden of proof, followed by six more instructions related to the justification defense. *Id.* at 630 ("Instructions twelve through nineteen covered the justification defense. Instruction twelve on justification concluded with the following stand-alone sentence: 'The State must prove the Defendant was not acting with justification.'").

Further, in closing arguments, both the State and Bachman directed the jury to review the justification defense. The State urged:

> The defense, it's clear it's justification, it's self-defense, and it's all coming down to that one little moment. Every time they tell you that it's justification, I want you to keep in mind these two notions: [Bachman] did not have a reasonable belief that it was necessary to use force to prevent an injury or loss or [Bachman] used unreasonable force under the circumstances. Hold their claim to that scrutiny. Because I can tell you what, it wasn't a reasonable belief and he used unreasonable force. He brought the gun to the fist fight with his friend that he encouraged to come over.

In response, Bachman emphasized to the jury that:

> But if you want to go to the justification, I've highlighted it here, even if they have you considering those, then unless you find the acts justified—Because a justification is an entire defense. Justification is a legal means of saying you're not guilty of this crime. And importantly, again, that's proving the negative. The State has to prove he did it. That his force was not justified.

8

I did not have to prove to you it was.  I talked to you about that in jury selection in opening.  It is very possible that you look at [Bachman] and you're not happy with what happened, that you disagree with the actions taken.  But the State has to prove that it was not justified under the law.

Bachman continued and applied the facts to the legal ramifications of justification, asking the jury to consider "whether it was reasonable for [Bachman] to think a person was going to come into that gate and hurt [Bachman], and whether it was reasonable to think when that gate opened, that person was going to hurt [Bachman]."

"The court is not required to give any particular form of an instruction; rather, the court must merely give instructions that fairly state the law as applied to the facts of the case." *State v. Booth-Harris*, 942 N.W.2d 562, 581 (Iowa 2020) (cleaned up).  On our review of the instructions submitted to Bachman's jury, we do not find that the jury was misled or that the instructions materially misstated the law.  *See Johnson*, 7 N.W.3d at 508.  In fact, as the State asserts, the jury would have considered the cross-reference to the justification defense in every marshaling instruction presented; "thirteen times."  But Bachman points out that many of the cases involving the justification defense followed his suggested instruction that included a reference to the defense in the list of elements to prove.  Even if that is a format seen regularly in the practice, we still would note that "an incorrect or improper instruction can be cured if the other instructions properly advise the jury as to the legal principles involved." *Kraai*, 969 N.W.2d at 490 (internal quotation marks and citation omitted); *see also State v. Trotter*, No. 19-1019, 2021 WL 594559, at *3–4 (Iowa Ct. App. Feb. 3, 2021) ("There is . . . no argument the instructions failed to properly instruct the jury of the applicable law.  Even though no cross-references to the justification defense [were] included with the marshaling instructions" as the

other instructions addressing the defense still required that "[t]he State must prove [the defendant] was not acting with justification.").

In sum, here the complained-of jury instruction, judged in the context of the other instructions, sufficiently instructed the jury about the legal principles involving the justification defense. We find no error in the submission of these instructions. We turn to Bachman's other jury instruction challenge.

**B. Instruction 21 and the Dangerous-Weapon Inference.** In instruction 21, the district court instructed the jury that: "If a person has the opportunity to deliberate and uses a dangerous weapon against another resulting in death, you may, but are not required to, infer that the weapon was used with malice, premeditation, and specific intent to kill." Bachman objected to the instruction arguing that the recent "Iowa Constitutional Amendment article I, section 1A, regarding the right to keep and bear arms, possessing a firearm is now a fundamental right and must be considered under strict scrutiny." Bachman continued in his objection to assert that the "stand your ground"[1] change in the law now means "there is no longer a proper inference of malice or any of the other inferences regarding a

---

[1] In *State v. Davis*, 988 N.W.2d 458, 465 (Iowa Ct. App. 2022) (internal citations omitted), a panel of our court explained:

> In 2017 the Iowa legislature amended the justification statute to include new stand-your-ground provisions. The amendments expanded the defense of justification by deleting existing language regarding alternative course of action and adding provisions "for the erroneous estimation of the danger presented and force necessary as long as there is a 'reasonable basis for the belief' and the person acts 'reasonably in the response' to a perceived threat." "Significantly, the amendment provides a person does not have a duty to retreat as long as a person 'is not engaged in illegal activity' and is in a place where they were 'lawfully present.'"

dangerous weapon in this case. Therefore, [Bachman requested] that all inferences based on the use of a dangerous weapon be stricken and not considered by the jury." The State contended that the constitutional amendment only reiterated existing federal constitutional rights and did not overrule prior settled law in Iowa concerning the dangerous-weapon inference. But Bachman urges "now that the right to bear arms is a core constitutional right in Iowa, due process and fundamental fairness prohibit any adverse inference against the accused in a criminal trial arising from the exercise of this right." So, under his reasoning, the State must use other evidence, not Bachman's use of a gun, to prove malice, premeditation, and specific intent.

We reject this reasoning. First, it goes against our current caselaw and we have not been instructed differently from our supreme court. "Our first-degree murder cases have long held that the use of a deadly weapon supports an inference of malice, and when accompanied by an opportunity to deliberate, also supports an inference of deliberation and premeditation." *State v. Reeves*, 636 N.W.2d 22, 25 (Iowa 2001) (citing cases involving the use of a gun as a deadly and dangerous weapon). Second, as an essential element of the offense of murder, the State must prove malice aforethought to the jury beyond a reasonable doubt, which "is a term of art used to describe a culpable state of mind." *Green*, 896 N.W.2d at 780. And our courts have noted that "it is often impossible for a jury to determine a defendant's state of mind without the aid of inference." *Id.* Thus, the court is permitted to use an instruction to inform the jury as to one "straightforward example of how the State might prove the defendant's culpable state of mind." *Id.* Finally, we are unaware of any authority that reads the second amendment right to bear arms extends "to protect the right of citizens to carry arms for *any sort* of

11

confrontation." *See State v. Breen*, No. 13-1478, 2015 WL 1546355, at *5 (Iowa Ct. App. Apr. 8, 2015) (citation omitted).

On our de novo review, we find no constitutional violation and the district court correctly overruled Bachman's objection to the instruction on the dangerous-weapon inference.

**C. Harmless Error.** Even if we found that there was an error in the instructions given to the jury, that error would be harmless here because of the strong evidence supporting the verdict. The harmless error standard provides:

> Error in giving or refusing to give a jury instruction does not warrant reversal unless it results in prejudice to the complaining party. When a court erroneously gives or refuses a jury instruction, we presume prejudice and reverse unless the record affirmatively establishes there was no prejudice. When the error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice. The presumption of prejudice is overcome when the jury received strong evidence of a defendant's guilt.

*Kraai*, 969 N.W.2d at 496–97 (internal quotation marks and citations omitted). We borrow from the district court's ruling on the motion for new trial describing the overwhelming evidence against Bachman:

> [Bachman] acknowledged the [application] messages moved to the point where it was anticipated that the parties would fight each other at Bachman's residence. The audio messages that occurred very close in time to the shooting, while not made directly to [the minor] from Bachman, showed that [Bachman] was in a hostile, agitated state of mind. And those would tend to provide proof of a deliberate, fixed intent to do injury to [the minor].
>
> Although [Bachman] says that what was expected was a fist fight, he went into his house, armed himself in the advance with the rifle, came back outside, locked an alternate point of entry to the fenced-in backyard,

12

and sat waiting armed and facing the only remaining entrance to the yard. It can be presumed that the person intends the natural consequences of their act when [Bachman] shot [the minor] four times at the gate. He had time to deliberate both before [the minor] arrived at the house and before he used the dangerous weapon, testifying that after locking eyes for a second with the victim at the gate, he took the time to pull the charging handle, turn the safety off, and raise the weapon before pulling the trigger. While there was much controversy about the seconds at the gate and what exactly happened, there is credible evidence from the video that Bachman appears at some points to try to push the gate open while [the minor] or someone on the other side is trying to push the gate back shut.

Immediately after the fact, [Bachman] stated, to paraphrase, "I'm on that, he wouldn't shut up." That supports the shooting was done with malice aforethought, deliberately, premeditatedly, and with the specific intent to kill, influenced by the parties' [messaging application] argument leading up to the shooting.

In addition, [Bachman] sent messages from the jail that could credibly be interpreted as after-the-fact evidence of his state of mind at the time of the shooting, being malicious, premeditated, and with the intent to kill.

Finally, "Iowa's justification defense does not authorize citizens to use a gun in a fistfight." *See State v. Howard*, 14 N.W.3d 763, 768 (Iowa Ct. App. 2024). Here, the jury had a front row seat to the events leading up to the shooting. The evidence established the aggressive posturing of Bachman before the shooting. Even more, the jury saw Bachman act deliberately, premeditatedly, and willfully in bringing his gun to the fist fight.

Any prejudice to Bachman from an alleged error in the instructions is overcome by the strong evidence of Bachman's guilt.

## IV. Conclusion.

Having found no error in the instructions, we affirm Bachman's conviction.

**AFFIRMED.**